IN THE UNITED STATES DISTRICT COURT
THE DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| POWERTECH INDUSTRIAL CO., LTD, a Taiwan company,<br><br>Plaintiff,<br><br>v.<br><br>360 ELECTRICAL, LLC, a Utah limited liability company,<br><br>Defendant. | **MEMORANDUM DECISION AND ORDER DENYING DEFENDANT'S [63] MOTION FOR LEAVE TO DESTROY OR ABANDON EXCESS AND DUPLICATIVE NON-CONFORMING PRODUCTS WITHOUT PREJUDICE**<br><br>Case No: 2:23-cv-00675-TC-CMR<br><br>District Judge Tena Campbell<br><br>Chief Magistrate Judge Cecilia M. Romero |

This matter is referred to Chief Magistrate Judge Cecilia M. Romero pursuant to 28 U.S.C. § 636(b)(1)(A) (ECF 8). Before the court is Defendant and Counterclaimant 360 Electrical, LLC's (Defendant or 360 Electrical) Motion for Leave to Destroy or Abandon Excess and Duplicative Non-Conforming Products (Motion) (ECF 63). The court also considers Plaintiff and Counter Defendant Powertech Industrial Co., LTD's (Plaintiff or Powertech) Opposition to the Motion (Opposition) (ECF 67) and Defendant's Reply in Support of the Motion (Reply) (ECF 70). The court has determined that oral argument would not materially assist it in deciding the issue. DUCivR 7-1(g). For the reasons set forth below, the Motion is DENIED.

## I.   BACKGROUND

The instant case concerns Plaintiff's claims relating to allegedly unpaid invoices for wall outlet products (the Product) pursuant to a contract for wall outlet manufacturing and shipment (ECF 17 ¶¶ 55–89). Defendant asserts the Product manufactured by Plaintiff was defective, and Defendant claims damages of its own (ECF 34 ¶¶ 267–754). Sometime after the inception of the

case, Defendant encountered issues which led to the dissolution of 360 Electrical; Defendant is without representation as of the date of this Order and allegedly without assets or employees (ECF 64 at 4; ECF 70 at 3; ECF 76 at 2–3; ECF 77). Pursuant to DUCivR 83-1.4, the court stayed the proceedings (ECF 80) until July 20, 2026, because Defendant's counsel has withdrawn and Defendant is without representation (ECF 77).

Defendant's Motion, filed March 3, 2026, stated it was "undergoing liquidation . . . and [was] in the process of dissolution" (ECF 63 at 4). Since early 2022 Defendant has allegedly been paying 1,500 dollars per month in order to store the Product in a warehouse (ECF 63 at 4). Defendant stated the Product "must be moved out of the warehouse" by the end of March but offered no specific reason why March was the deadline (*Id.*). By March 24, 2026, Defendant completed dissolution, "no longer exist[ed] and ha[d] shut down" (ECF 70 at 3). Due to the dissolution of Defendant as a company after the present Motion was filed, Defendant's counsel Caleb Hatch (Mr. Hatch) filed a motion to withdraw as counsel (ECF 76), which the court granted (ECF 77). Mr. Hatch's motion to withdraw, filed April 22, 2026, stated that "360 Electrical, LLC was dissolved a while ago and is no longer in business; does not have any assets and employees; and cannot pay for ongoing legal services" (ECF 76 at 2).

Prior to its dissolution Defendant claims it previously notified Plaintiff of "its reasoning behind the need to destroy [the Product]," and offered Plaintiff the opportunity to pick up the Product, inspect the Product, or pay for storage of the Product (ECF 63 at 3–4, 9–10). According to Defendant, Plaintiff accepted the offer to pay for storage of the Product until which time Plaintiff would pick up the Product, but Plaintiff allegedly never sent any payment and has never picked up the Product (ECF 3–4). Because of these circumstances Defendant requests leave to abandon or destroy all of the Product, except a twenty-five-unit sampling (ECF 63-1). Plaintiff's Opposition

denies Defendant gave any notice of intent to destroy, and Plaintiff denies the existence of any storage agreement between the parties (ECF 67 at 9–10).

## II.    LEGAL STANDARD

"[L]itigants have a duty to preserve documents or materials … that may be relevant to ongoing and potential future litigation." *Vitamins Online, Inc. v. Heartwise, Inc.*, No. 2:13-cv-00982, 2016 WL 1305144, at *2 (D. Utah Mar. 31, 2016) (quoting *Philips Elecs. N. Am. Corp. v. BC Technical*, 773 F. Supp. 2d. 1149, 1195 (D. Utah 2011)); *Jordan F. Miller Corp. v. Mid-Continent Aircraft Serv., Inc.*, 139 F.3d 912 (10th Cir. 1998). "This is a general duty that arises from case law." *Fry v. Sch. Dist. No. 1*, No. 24-cv-02284, 2024 WL 7006417, at *3 (D. Colo. Dec. 31, 2024).

"Federal courts possess inherent powers necessary 'to manage their own affairs so as to achieve the orderly and expeditious disposition of cases.'" *Jordan F. Miller Corp. v. Mid-Continent Aircraft Serv., Inc.*, No. 97-5089, 1998 WL 68879, at *3 (10th Cir. Feb. 20, 1998) (quoting *Chambers v. NASCO, Inc.*, 501 U.S. 32, 43 (1991)). Among these powers are the "inherent authority to issue preservation orders." *Centurylink, Inc. v. Alpine Audio Now, LLC*, No. 15-cv-01973, 2016 WL 192291, at *1 (D. Colo. Jan. 15, 2016) (quoting *Bright Sols. for Dyslexia, Inv. v. Doe 1*, No. 15-cv-01618, 2015 WL 5159125, at *2 (N.D. Cal. Sept. 2, 2015)). In determining whether a preservation order is necessary, courts have considered:

> (1) the level of concern the court has for the continuing existence and maintenance of the integrity of the evidence in question in the absence of an order directing preservation of the evidence; (2) any irreparable harm likely to result to the party seeking the preservation of the evidence absent an order directing preservation; and (3) the capability of an individual, entity, or party to maintain the evidence sought to be preserved.

*Id.*; *see also, e.g.*, *Greer v. Moon*, No. 2:24-cv-00421, 2026 WL 885884, at *1–2 (D. Utah Mar. 31, 2026) (applying the same set of factors).

### III.    DISCUSSION

A number of matters are not in dispute. All parties agree Defendant has some type of duty to preserve the Product (ECF 63 at 3, 5; ECF 2–5). The relevance of the Product to litigation is not in dispute either. Plaintiff states that the Product is "essential to both 360 Electrical's and Powertech's claims and defenses—this entire case centers on the condition of those products" (ECF 67 at 4). Defendant, likewise, acknowledging the relevance of the evidence, still proposes to "retain a sampling of the [Product] for litigation as it continues" (ECF 63 at 3). The core undecided questions are whether the duty to preserve evidence has limitations based on the burdens to the custodial party and whether there is an established standard for granting motions to destroy or abandon evidence. Neither party has adequately briefed these issues, however.

There is a plethora of case law on spoliation sanctions and when the duty to preserve evidence is triggered. Far fewer cases, however, address motions for permission to destroy evidence or whether the duty to preserve evidence is limited by burdens on the custodial party. As the court stated in *Al Otro Lado, Inc. v. Nielson*, "there is minimal case law support for defendant's request," because "[t]ypically, [c]ourts are presented with requests seeking the preservation of relevant data, not requests like the one at issue where the party requesting the . . . order seeks judicial permission to *destroy* potentially relevant documents and information." 328 F.R.D. 408, 415 (S.D. Cal. 2018).

Defendant cites Federal Rule of Civil Procedure 26(b)(2)(C) (ECF 63 at 5), which states that "[o]n motion or on its own, the court must limit the frequency or extent of discovery otherwise allowed by these rules." Fed. R. Civ. P. 26(b)(2)(C). However, Defendant does not address why this is applicable since Defendant's request is to destroy or abandon evidence, not limit the

"frequency or extent of discovery."[1] Regardless, some parties seeking leave of absence to destroy evidence have moved under Rule 26(c), *see, e.g.*, *Al Otro Lado*, 328 F.R.D. at 415, which allows the court to, "for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense." Fed. R. Civ. P. 26(c)(1).

Defendant also relies heavily on a Utah Court of Appeals case, *Diversified Concepts LLC v. Koford*, 2021 UT App 71, ¶ 26, 495 P.3d 755, 766 (ECF 63 at 5, 8, 9). Under *Diversified*, "a custodial party may discharge its duty to preserve evidence—thereby insulating it from spoliation sanctions—if it: (1) has reasonable grounds for destroying the evidence and (2) provides advance notice to the noncustodial party that allows for a full and fair opportunity to inspect that evidence." *Id.* Besides restating the common law duty to preserve evidence, Plaintiff offers no alternative standard and replies that *Diversified* is inapposite because it "applies the Utah standards . . . not federal standards" (ECF 67 at 2–3). However, Plaintiff did not brief if state spoliation law could apply, seeing as this court sits in diversity. *See Rowe v. Albertson's Inc.*, 116 F. App'x 171, 173–74 (10th Cir. 2004) (applying Texas state law to plaintiff's spoliation claims in diversity jurisdiction case); *but cf. Heglet v. City of Hays, Kansas*, 844 F.3d 1216, 1226 n.6 (10th Cir. 2017) ("Although this circuit has not directly spoken to the issue, other circuits have held that sanctions for the spoliation of evidence is a matter of federal law."). Regrettably, however, neither party has cited case law or provided an *Erie* analysis which might aid the court in determining whether state or federal law ought to apply. *See generally Erie R. Co., v. Tomkins*, 304 U.S. 64 (1938) (outlining when federal courts should apply state law). Furthermore, neither party has discussed whether spoliation case law is applicable at all. Even if spoliation case law defines the duty to preserve

---

[1] At times Defendant argues that the court has inherent authority, at times it argues the court has authority under Rule 26, and at other times Defendant seems to suggest that its duty to preserve has been discharged, and destruction of the Product would not be spoliation regardless of court permission (ECF 63 at 5, 8, 9).

evidence, whether a party can be sanctioned for the destruction of evidence does not necessarily bear on whether the court has the authority to grant a party's request to destroy evidence; the spoliation standard is retrospective, but a prospective standard would better address the situation before the court. This is all to say, the standard is unclear and the parties have not aided the court in elucidating it. Notwithstanding, below the court discusses two avenues of approach.

### A. Two Approaches to Address Requests to Destroy Evidence

#### 1. The Spoliation Doctrine's Approach

The first approach the court can take is to use spoliation doctrine on the scope of the duty to preserve evidence.[2] Some federal courts have taken a similar approach to *Diversified*, by limiting the extent of the duty to preserve evidence when the custodial party has (1) a legitimate reason to destroy the evidence, and (2) has given interested parties adequate notice of the intent to destroy and a reasonable opportunity to inspect the evidence. One federal court within the Tenth Circuit found there was no duty to preserve evidence where the custodial party had reason to destroy the evidence, and the opposing party had already inspected it. *See Okla. Farm Bureau Mutual Ins. Co. v. Omega Flex, Inc.*, No. CIV-22-18-D, 2023 WL 7288737, at *1–3 (W.D. Okla. Nov. 23, 2023).

Within the Tenth Circuit, *Okla. Farm Bureau Mutual Ins. Co.* is the most on point case, but otherwise no Tenth Circuit cases directly address motions for permission to destroy evidence, or whether the duty to preserve evidence may be constrained by the burdens on the custodial party.

---

[2] A concern with applying the spoliation standard, however, is its retrospective nature. In particular, the standard does not address the importance of the evidence to the case or the level of prejudice to the opposing party. The standard is only used to assess whether spoliation has occurred, and the sanctions for spoliation take into account the level of prejudice to the opposing party. "Where there is an allegation of spoliation, the district court should *first* determine whether the custodial party violated its duty to preserve the evidence at issue . . . if the duty was violated, the court should *then* assess what type of sanction should be imposed." *Diversified*, 2021 UT App 71, ¶ 45, 495 P.3d at 774 (emphasis added). To address this gap the court also looks to a second approach. *See infra* Section III.A.2.

Neither Plaintiff nor Defendant provided on point case law of their own. Plaintiff argues that because there is no Tenth Circuit case law endorsing an exception to the duty to preserve evidence, the Tenth Circuit therefore does not have any exception to the duty to preserve evidence (ECF 67 at 10). However, the correct conclusion from the lack of case law is not that no exception, or limitation, on the duty exists. Rather, it is just that the Tenth Circuit has not ruled on the issue yet.

Outside the Tenth Circuit, courts borrow heavily from state law and have homed in on a similar standard as the one stated in *Diversified*. *See, e.g.*, *Thiele v. Oddy's Auto and Marine, Inc.*, 906 F. Supp. 158, 162–63 (W.D.N.Y. 1995) (denying a spoliation sanction requested by a defendant who had inspected the evidence before it was destroyed, while granting a spoliation sanction requested by a third-party defendant who was not afforded a similar opportunity to inspect the evidence); *Baliotis v. McNeil*, 870 F. Supp. 1285, 1290–91 (M.D. Pa. 1994) ("'The scope of the duty to preserve evidence is not boundless.' At a minimum, however, an opportunity for inspection should be afforded a potentially responsible party before relevant evidence is destroyed." (quoting *Hirsch v. General Motors Corp.*, 266 N.J. Super. 222, 628 A.2d 1108, 1114 (1993))); *see also generally Victor Stanley, Inc. v. Creative Pipe, Inc.*, 269 F.R.D. 497, 521 (D. Md. 2010).[3] In sum, the parties presented no binding federal standard that contours the limits of the duty to preserve evidence, and to the extent federal courts inside or outside the Tenth Circuit have addressed the issue, they appear to mirror the decision in *Diversified*.

---

[3] Within the Tenth Circuit, *Okla. Farm Bureau Mutual Ins. Co.* also borrows heavily from state law. 2023 WL 7288737, at *1–3 (citing *Toman Eng'g Co. v. Koch Constr., Inc.*, 2022 ND 104, ¶ 20, 974 N.W.2d 680, 687 (citing *Diversified*, 2021 UT App 71, ¶ 26, 495 P.3d at 766)).

2. *The Preservation Order Approach*

The second approach is to look to the limited federal court decisions in California. They have concluded that the difference between granting leave of absence to destroy evidence and an order to preserve evidence is a difference in name only:

> By opposing [Defendant's] request to destroy the samples, [Plaintiff is] functionally asking [Defendant] to preserve the samples, rather than destroy them. In other words, while technically the [c]ourt is evaluating [Defendant's] request to destroy evidence, rather than [Plaintiff's] request to preserve evidence, this is a distinction without a difference. The [c]ourt will accordingly apply the test typically applied when evaluating a party's request to preserve evidence . . . [t]hat said, because [Defendant is] the party bringing this motion and the party seeking to alter the status quo, they, not [Plaintiff], will hold the burden of proof.

See *Cal. Dep't of Toxic Substances Control v. NL Industries, Inc.*, No. 2:20-cv-11293, 2025 WL 1674442, at *3 n.1 (C.D. Cal. Mar. 14, 2025). Two district courts have taken such an approach. See *id.*; *Al Otro Lado*, 328 F.R.D. at 415. In determining whether a preservation order is necessary, courts have considered:

> (1) the level of concern the court has for the continuing existence and maintenance of the integrity of the evidence in question in the absence of an order directing preservation of the evidence; (2) any irreparable harm likely to result to the party seeking the preservation of the evidence absent an order directing preservation; and (3) the capability of an individual, entity, or party to maintain the evidence sought to be preserved.

*Id.* (citing *Capricorn Power Co., Inc. v. Siemens Westinghouse Power Corp.*, 220 F.R.D. 429, 433–34 (W.D. Pa. 2004) (widely cited for the preservation order standard)); *accord Greer v. Moon*, No. 2:24-cv-00421, 2026 WL 885884, at *1–2 (D. Utah Mar. 31, 2026). Unlike the spoliation doctrine approach, this path has the advantage of applying a prospective standard. The issue, however, is that the first and third preservation factors point in the wrong direction when the movant is asking for leave to destroy evidence. Normally, the financial incapability of a party to preserve evidence, and the concern that a party will not be able to continue to preserve evidence, points towards

granting an order to preserve the evidence. "This is so because in the absence of any significant past, present or future threat to the continuing integrity or existence of the evidence, such an order is superfluous." *Capricorn Power*, 220 F.R.D. at 433–34. In a motion for leave to destroy evidence, however, the custodial party's argument is the exact opposite; it should be permitted to destroy evidence since it is incapable financially or incapable in some other capacity to continue to preserve the evidence (*see, e.g.*, ECF 63 at 3–4). *See, e.g.*, *Al Otro Lado*, 328 F.R.D. at 412; *Cal. Dep't of Toxic Substances Control*, 2025 WL 1674442, at *1–2.

## B. Factors the Court Considers

In sum considering the above issues and case law, the court will consider the following in assessing whether to grant the present Motion: (1) whether the custodial party has reasonable grounds for destroying the evidence; (2) whether the custodial party provided adequately advanced notice to the noncustodial party that allows for a full and fair opportunity to inspect that evidence; and (3) in light of the amount in controversy, the parties' resources, and the importance of the evidence in resolving the issues at stake, whether the burden of preservation on the custodial party is outweighed by the level of prejudice or irreparable harm to the noncustodial party that would result from the destruction of the evidence. Before analyzing these factors in the present case, the court turns to a final issue regarding the court's authority to sanction the destruction of evidence.

"Federal courts possess inherent powers necessary 'to manage their own affairs so as to achieve the orderly and expeditious disposition of cases.'" *Jordan F. Miller Corp.*, 1998 WL 68879, at *3 (quoting *Chambers*, 501 U.S. at 43). Despite this power, it is not clear that the court can reach into and alter a duty owed by one party to the other. This seems to be the argument made by Plaintiff, which states that "360 Electrical's Motion essentially requests the Court's permission to commit spoliation" (ECF 67 at 4). Yet the argument begs the question to whom the custodial

party's duty to preserve evidence is owed. As before, the Tenth Circuit has not ruled on the issue. Federal courts have, however, frequently found that "the duty to preserve evidence relevant to litigation of a claim is a duty owed to the *court*, not to a party's adversary." *Victor Stanley*, 269 F.R.D. at 525 (collecting cases). Since the duty is owed to the court, it stands to reason that the court can alter the duty or at least outline its contours. *See, e.g.*, *Al Otro Lado*, 328 F.R.D. at 412 (granting in part defendants' motion for protective order). The court now turns to analyzing the factors for leave to destroy evidence.

1.  *The Custodial Party Has Reasonable Grounds for Destroying the Evidence.*

The court finds Defendant has reasonable grounds for destroying the Product. Regarding Plaintiff's arguments, Plaintiff is correct to point out the difference between Defendant's burden here, and the burden on the custodial party in *Diversified* (ECF 67 at 4). In *Diversified* the circumstances meant that "[i]n effect, the duty to preserve—if unyielding—would force the individual to choose between rebuilding the home or pursuing a lawsuit." 2021 UT App 71, ¶ 23, 495 P.3d at 765. Similarly in *Okla. Farm Bureau Mutual Ins.*, preserving the evidence indefinitely or until the end of litigation would have effectively prevented the homeowners from rebuilding their burnt down home. *See* 2023 WL 7288737, at *1. In *Toman Eng'g* preserving evidence would have meant the continual flooding of third parties' residences. 2022 ND 104, ¶¶ 2–9, 974 N.W.2d at 684–85. These cases suggest a greater burden is required than, as Plaintiff puts it, "360 Electrical's desire to avoid storage costs" (ECF 67).

As the court sees it, however, whether the burden is financial cost or the inability to rebuild a home, both may be equally unsustainable burdens in certain circumstances. Defendant has apparently dissolved, it cannot afford to pay for legal counsel, and asserts it can no longer afford the 1,500 dollars per month it costs to store the Product (ECF 63 at 2–3; ECF 76 at 2–3). In fact,

as of the date of this Order Defendant may have no assets or employees remaining (ECF 76 at 2). The exact number of units of the Product is uncertain, but Defendant claims it has been storing "tens of thousands of units" of the Product (ECF 63 at 6). There is also no significant worry that the Defendant is misrepresenting its financial situation in order to obtain the requested relief. Defendant's counsel has withdrawn, and no new counsel has been appointed within the required period (ECF 77). DUCivR 83-1.4 (b)(2)(G). Failing to appoint new counsel risks entry of default judgment. *See id.* It seems unlikely Defendant is feigning financial insecurity in order to avoid 1,500 dollars a month in storage charges at the cost of exposing itself to millions of dollars from a potential default judgment. Defendant's burden is not as serious as an inability to rebuild a home but, given the current information before the court, the burden on Defendant appears significant.

2. *The Custodial Party Has Not Provided Adequately Advanced Notice to Allow the Noncustodial Party a Full and Fair Opportunity to Inspect the Evidence.*

Defendant has claimed a number of notices to Plaintiff, but none are sufficient to have allowed Plaintiff a full and fair opportunity to inspect the Product. According to the Defendant, it contacted Plaintiff and requested that Plaintiff pick up the Product or pay for its storage, which Defendant says was accepted (ECF 63 at 9). Plaintiff disputes this claim (ECF 63 at 9; ECF 67 at 10–11). Plaintiff asserts that Defendant's Motion "is the first notice that 360 Electrical needs to vacate the location where the products are currently stored by the end of March" (ECF 67 at 10–11). The court cannot conclude on this mixed evidence Defendant gave notice.

Defendant also argues that "the deadline to serve a request for inspection has long passed" (ECF 63 at 3, 10). However, the January 2, 2026, deadline Defendant references was only the deadline for written discovery (*id.*; ECF 75 at 3). The deadline for fact discovery was May 15, 2026, more than a month after Defendant filed its Motion (ECF 75 at 3). Furthermore, the fact discovery deadline has been stayed, and recently on June 16, 2026, a motion to extend the stay

was filed (ECF 82). Hence, the possibility of future requests for inspection of the Product has not been foreclosed (ECF 80).

Defendant's Motion filed the third of March 2026, is not advanced enough notice for its need to move out at the end of March. It is also not advanced enough notice to destroy the Product as of the date of this Order. Therefore, the court cannot grant immediate permission to destroy the Product. This being said, Plaintiff has had more than a year since the first discovery order in 2024 to inspect the Product and has not done so (ECF 52). Though not sufficiently advanced notice, the Motion is notice of Defendant's need to destroy or abandon the evidence. If Plaintiff was not on notice before, it is on notice now. Given reasonable opportunity to inspect the Product through the end of fact discovery, Defendant will have met its obligation to provide adequately advanced notice to the Plaintiff.

3. *In light of the amount in controversy, the parties' resources, and the importance of the evidence in resolving the issues at stake, the burden of preservation on the custodial party is not outweighed by the level of prejudice or irreparable harm to the noncustodial party that would result from the destruction of the evidence.*

The destruction or abandonment of the Product would undoubtedly cause irreparable harm to Plaintiff, if not both parties. As Plaintiff has correctly stated, the Product is "essential to both 360 Electrical's and Powertech's claims and defenses—this entire case centers on the condition of those products" (ECF 67 at 4). Defendant's request to maintain a twenty-five-unit sampling of the Product does not necessarily dissolve this harm. The court agrees with Plaintiff that allowing Defendant to unilaterally select a sampling of the Product to preserve would effectively ask the court and the jury "to accept an inference that if whichever allegedly non-conforming products [Defendant] unilaterally elects to retain as 'exemplars' are nonconforming, then all the products [are]" (ECF 67 at 6). This could harm both parties' ability to litigate because it is a material issue to multiple claims involved whether the Product is non-conforming, and if so, how much of it is

non-conforming and in what way. By destroying the Product or keeping a small sampling of it, Defendant avoids 1,500 dollars per month in storage costs, yet both parties are claiming more than a million dollars in damages (ECFs 17, 34). Allowing the immediate and total destruction of the Product in order to alleviate the storage burden on Defendant is not proportional to the claims at issue in the case.

Nonetheless, denying the motion to destroy evidence would, as before, still not help Plaintiff avoid this prejudice. Notwithstanding, the court is limited in what it can do outright given that Defendant's counsel has withdrawn, and the case has been stayed. Therefore, the court finds that the Defendant must continue to preserve the Product, but once counsel for Defendant is secured, a renewed motion may be filed after the parties meet and confer if no agreement is reached.

## IV.    CONCLUSION AND ORDER

For the reasons stated above, the court DENIES Defendant's Motion for Leave to Destroy Evidence without prejudice, and ORDERS the following:

1. Regarding Defendant's duty to preserve the Product, the court ORDERS Defendant to continue to preserve the Product.

2. Once Defendant's counsel makes an appearance, the court ORDERS Defendant to give Plaintiff all reasonable access to the Product for inspection.

3. Once Defendant's counsel makes an appearance, the court ORDERS the parties to meet and confer to determine if an agreement can be reached on a sample size and selection for either party to maintain, and otherwise whether Plaintiff will pay for storage of the Product, or whether Plaintiff will arrange to pick up and preserve the product itself. If no agreement can be reached, Defendant may file a renewed motion.

IT IS SO ORDERED.

DATED this 17 July 2026.

Chief Magistrate Judge Cecilia M. Romero
United States District Court for the District of Utah